UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 0 8 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 03-280-GWU

ALVIN CALDWELL,                                                    PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Caldwell v. Barnhart, London Civ. Action No. 01-221 (E.D. Ky.), to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After a period of reconsideration prompted by the undersigned's Memorandum Opinion, Order and Judgment of July 10, 2002, and after consolidation of new claims for benefits, a negative administrative decision was again issued. (Tr. 324-334). The appeal has been redocketed under the above-styled number and is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

Caldwell

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the

2

Caldwell

Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

Caldwell

symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4


Caldwell

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

Caldwell

and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record

6

reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The administrative law judge (ALJ) issuing the latest final agency decision indicated that Caldwell continued to have "severe" back pain, borderline intelligence, and a depressive disorder. (Tr. 329). He noted that the undersigned's remand order had focused on Caldwell's mental and educational status, so that a consultative psychological examination was performed and mental health expert witness evidence had been gathered on remand. (Tr. 329). The ALJ then determined that the plaintiff had the residual functional capacity for a limited range of light work which included non-exertional mental limitations, which precluded the performance of his past work. (Tr. 331). As the vocational expert (VE) was able to identify compatible alternative jobs (Tr. 332-333), the claim for benefits was denied (Tr. 334).

The plaintiff had a history, before the alleged onset date of February, 1998, of having a Vitamin B-12 deficiency which necessitated injections (e.g., Tr. 115, 152)

7

and anxiety or depression (e.g., Tr. 174, 257, 296) which generally improved while employed (Tr. 113, 174, 181-186, 189-190) albeit not always (Tr. 187, 188).[1]

Later, in the first half of 1998, his treating mental health source reported that he had become stressed out and had a flat affect (Tr. 191, 192, 278); later in the year, the staff reported that he was mentally okay or mentally "clear" with "no motivation in work" (Tr. 226-227). A consultative physical examiner, although finding no obvious physical restrictions, thought the plaintiff had subtle signs of an anxiety disorder and calculation difficulties. (Tr. 199-200). A consultative mental health examiner found him to be moderately anxious and mildly irritable with defensive responses (Tr. 204, 205) and rated his ability to concentrate, persist on task or tolerate stress as "fair" (Tr. 206). Two medical reviewers then completed functional assessment forms. One indicated moderate limitations in maintaining concentration and attention relating to the general public and adjusting to changes in the work setting. (Tr. 208-209). The other reviewer found numerous additional moderate limitations. (Tr. 232-233).

After the reviewers had analyzed the record, several other pieces of 1998 evidence were submitted. At one point, just before the alleged onset date, the treating mental health facility staff felt he had questionable reliability vis-a-vis his

---

[1] At the end of 1997, the treatment facility's staff rated his GAF score at the high level of 79. (Tr. 253).

8

Caldwell

substance abuse. (Tr. 248).² The last 1998 progress notes, moreover, had suggested a brighter mood. (Tr. 272-275).

As far as the plaintiff's physical condition in 1998 was concerned, one x-ray did reveal mild scoliosis and minimal degenerative disc disease. (Tr. 196). Another lumbar x-ray two months later revealed degenerative joint disease at the facet joints of L5-S1. (Tr. 308). The University of Kentucky Medical Center staff diagnosed back pain, and noted that exhibited minimal tenderness and some stiffness. (Tr. 229). A B-12 level proved adequate. (Tr. 231). No physical functional restrictions were cited.

In 1999, the patient continued to seek mental health treatment. The clinicians noted his flat facial expression in February and his depression was described as "chronic . . . since at least January, 1995." (Tr. 171). He remained depressed as of March. (Tr. 269).

This evidence was previously reviewed by the undersigned and remanded for further consideration of the plaintiff's educational and mental health status under the following rationale:

> Greater mental restrictions were noted by the majority of sources of record. Consultative Examiner John Williams, although primarily conducting a physical examination, diagnosed an anxiety disorder and expressed doubt about 's capacity to perform calculations. (Tr. 200).

---

²This was a rarely expressed opinion, particularly after the alleged onset date, when the existence of substance abuse does not appear to have been seriously in question.

9

Caldwell

> Mental Health Examiner Kevin Eggerman did not complete an assessment form but instead made statements (albeit somewhat confusing ones) about Caldwell's ability 'to relate to coworkers and supervisors is negatively impacted by Axis II psychopathology, but <u>otherwise</u> is fair' (Tr. 206, emphasis added); Eggerman also referred to a restricted ability to persist on task (Tr. 206), not precisely quoted in the hypothetical, and a very low current GAF (Tr. 205). Medical Reviewer Edward Stodola, who believed Eggerman's opinion had to be given 'substantial weight' (Tr. 210), completed a form and cited somewhat different factors, such as 'the ability to respond appropriately to changes in the work setting' (Tr. 209). Medical Reviewer Ann Demaree cited even more extensive limitations. (Tr. 232-233) [Footnote omitted.]
>
> The above evidence suggests that the educational (at least in the sense of mathematical ability) and mental factors considered by the ALJ (Tr. 23-24) were inadequate. The case must be remanded for further consideration. [Footnote omitted.]

<u>Caldwell v. Barnhart</u>, London Civ. Action No. 01-221, pp. 7-8 (E.D. Ky. July 10, 2002).

Upon remand, additional evidence was gathered. The new medical records in 2000 demonstrate that, physically, the plaintiff received treatment for back and neck pain and Vitamin B-12 injections. (Tr. 481-484). A cervical spine CT scan was negative. (Tr. 485). Again, no functional restrictions were noted by sources treating his physical condition. A consultative examiner, who saw the plaintiff the following year (2001) found no range of motion deficit in the neck, back, fingers, hips, or elbows and detected no motor, sensation or reflex deficits. (Tr. 487-488). Although x-rays showed "minimal" degenerative joint disease, the doctor felt there were no physical restrictions. (Tr. 488). A medical reviewer also felt there were no work-

Caldwell

related impairments. (Tr. 507). Thus, it is clear that the evidence continues to demonstrate few, if any restrictions, and certainly none more than were considered by the ALJ.

The rest of the new evidence related to the plaintiff's mental condition, which had been part of the focus on remand. One medical reviewer cited four moderate mental restrictions, two of which related only to detailed instructions. (Tr. 489-491). A new mental health treatment facility's records for the plaintiff start in August, 1999. He was originally diagnosed with a major depressive disorder (Tr. 534), but also simultaneously described as friendly, neatly groomed, alert, attentive, focused, oriented with intact memory and coherent speech (Tr. 533). Several conditions including post traumatic stress disorder (related to childhood abuse), a dysthymic disorder, and a generalized anxiety disorder were to be ruled out. (Tr. 532). He was said to have symptoms of a panic disorder. (Tr. 531). As of August, 2001, he was diagnosed with a dysthymic disorder and a panic disorder (Tr. 521); however, he was still described as neat, friendly, alert, attentive, focused, oriented and with an intact memory. (Tr. 520). Although there had been an earlier remark from a staff member indicating that the plaintiff would be a good candidate for testing, including IQ testing, (Tr. 527), the plaintiff was estimated to have average intelligence (Tr. 520). On the last progress note, the plaintiff indicated that his mood and sleep had improved with the current medication regimen and he had daily activities. (Tr. 509). A medical reviewer then completed a form with four moderate limitations, again two of which

<div align="right">Caldwell</div>

related only to detailed instructions. (Tr. 542-542). Finally, a 2002 consultative mental health examination took place; the examiner noted that the plaintiff alleged having a third grade reading ability and having had regular mental health counseling (Tr. 627-628), but felt he had malingered sufficiently on all testing and so little few records had accompanied the plaintiff that he was unable to further assess him (Tr. 631).

Dr. Doug McKeown testified that the plaintiff's records showed that he should be evaluated for a chronic pain disorder associated with his back pain, a possible intellectual deficit, and a mood disorder. (Tr. 371-373). None of the Listing of Impairment Sections had been met for the plaintiff based on the evidence of record. (Tr. 373). All functional abilities would be "fair" (satisfactory) except for handling complex job instructions, which would be "poor," and handling simple instructions which would be "good." (Tr. 374-375). He at least somewhat addressed Examiner Eggerman's confusing statement (Tr. 376) which had previously troubled the Court. He also indicated that his final assessment was consistent with both Eggerman's assessment (Tr. 376) and both medical reviewers' assessments (Tr. 377-378).

The VE was then given some rather gratuitous physical restrictions as well as several added mental restrictions (e.g., Tr. 382) and named jobs in response. He indicated that "fair" or "moderate" restrictions did not appear appreciably different to him to achieve a different vocational result. (Tr. 384-385). He also stated that having

<div align="center">12</div>

<div align="right">Caldwell</div>

nine different areas of limitation would make no difference, if at the same level of limitation. (Tr. 385-386).

Given the broad brush of the vocational expert's testimony regarding the effect of mental function restrictions, the Court finds that the general mental health concerns were addressed on remand, but notes that the remand was also <u>expressly</u> for the consideration of the plaintiff's educational status as well. The plaintiff had repeatedly and consistently stated that his reading and mathematical capacity was at a marginal level (e.g., Tr. 37, 87), and the Court noted as part of the prior remand directive that one prior consultative physical examiner had demonstrated calculation deficits, albeit he did not test the plaintiff's reading ability.

On remand, school records had been submitted. Early high school records show extremely poor grades, with Ds and Fs predominating. (Tr. 587). The plaintiff apparently spent three years in the 12th grade, taking classes such as English III (which he was unable to pass), shop, trade school, Remedial English (which he passed his third year with a "D") and General Business. (Tr. 585-585). One notation indicates that a 79 IQ score had been recorded in 1968. (Tr. 588). None of these records were provided to the only consultative mental health examiner to assess the plaintiff on remand,[3] and who was the only one who stated that there was no

---

[3]This is another example of the agency's failure to provide critical records to a consultative examiner. Regardless of whether or not Caldwell malingering on his testing with the latest consultative examiner, the provision of additional records would have provided the examiner with additional perspective, rather having to characterize the

Caldwell

"evidence" to support limited academic functioning. (Tr. 627). The ALJ determined to use a "twelfth grade education" in the hypothetical given to the vocational expert.

Given the fact that this was a patent directive of the Court to consider the issue, and it was not addressed on remand, the case will be remanded yet another time.

This the 8 day of March, 2006.

*G. WIX UNTHANK*
SENIOR JUDGE

---

plaintiff's statements as mere "claims" of low academic ability, or having sought regular treatment, etc. Even the consultative examiner noted that treatment records would have been helpful in assessing the plaintiff.